*In re* MARRIAGE OF JEANNE KERMAN, Petitioner-Appellee, and BRIAN KERMAN, Respondent-Appellant.

Second District   Nos. 2—92—1180, 2—93—0663 cons.

Opinion filed December 6, 1993.

Keith E. Roberts, Sr., Joseph M. Rielinger, and Rosemarie Calandra, all of Donovan & Roberts, P.C., of Wheaton (David Drenk, of counsel), for appellant.

Glenn K. Seidenfeld, of Jenner & Block, of Chicago (Barry Levenstam, of counsel), and Timothy J. McJoynt, of Jones & McJoynt, of Downers Grove, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Respondent, Brian Kerman, appeals from the judgment of the circuit court of Du Page County which dissolved his marriage to petitioner, Jeanne Kerman, awarded custody of the minor children to petitioner, and distributed the marital and nonmarital property. On appeal, respondent contends that the trial court erred in barring relevant testimony of the children's therapist, in awarding custody of the children to petitioner contrary to their best interest, and by including nonmarital property in the distribution of the marital estate. We reverse.

The parties were married in 1982. Two minor children were born of the marriage, Jeremy, age eight at the time of the trial, and Dustin, then age five. Petitioner filed a petition for dissolution of marriage on July 27, 1989, and also filed a motion for temporary relief, seeking, *inter alia*, temporary custody of the children. No custody order was entered until the last day of trial, June 5, 1992, when temporary custody was awarded to petitioner.

In September 1989 petitioner moved out of the marital home with the children to the home of her sister. On September 13, 1989, the trial court entered an order allowing respondent visitation with the children.

From September 1989 to December 1991, respondent took the children on an almost weekly basis to see Daniel B. Lippmann, a social worker and therapist engaged by the parties to counsel the children about the impending divorce. In October 1989, respondent took the children to a psychologist, Dr. Harry Gunn, for testing and evaluation. Dr. Gunn was respondent's expert witness in the custody dispute.

In November 1989 the court ordered that the parties be seen by a conciliator, psychologist Dr. Roger Hatcher. During the next few months, Dr. Hatcher conducted seven evaluation sessions with the parties, including meetings in which each party came separately with the children. Petitioner called Dr. Hatcher as her expert witness in the custody dispute.

In March 1990 petitioner moved to a two-bedroom apartment. Victor Ivanoff, formerly an employee of respondent and close friend of both parties, spent time with petitioner and the children in the apartment, including staying over some nights. The nature of Ivanoff's relationship with petitioner and its possible effect on the children was, and remains on appeal, a subject of substantial dispute. The trial court struck respondent's offer of proof that Ivanoff was convicted of telephone harassment for making anti-Semitic threats. Respondent is Jewish and the children have been raised in the Jewish faith.

On May 21, 1990, pursuant to a court order requested by respondent, the children were taken by respondent and petitioner to Mt. Sinai Hospital to be examined for sexual abuse. The 14-day protection order also prohibited each party from conjugal cohabitation with another in the presence of the children. No evidence of abuse was found, and the children were released on May 25, 1990.

The parties quarrelled frequently over the children's health care. In June 1990, the trial court entered an agreed order requiring that the parties refrain from taking the children to health care providers, without notice and consent of the other, with the exception of several designated practitioners, including Daniel Lippmann.

On August 27, 1992, the trial court filed a memorandum opinion, and on September 24, 1992, a judgment for dissolution of marriage was entered. Custody of the children was awarded to petitioner, subject to limited visitation by respondent. Respondent was ordered to

pay petitioner $900-per-month child support, $300-per-month maintenance for five years, and $20,000 for petitioner's attorney fees.

The total marital estate for which the trial court assigned values was $274,000. Of that amount, respondent was awarded $191,000 and petitioner, $81,000. The parties' business, D.K. Value Tires, was awarded to respondent. Respondent was also ordered to pay debts of the tire business totalling $23,000, which included a $19,000 debt to Goodyear Tire Company. Commonwealth Edison and Quaker Oats stocks were classified as marital property and awarded to respondent. The marital residence was ordered sold, with 70% of the net proceeds to be distributed to petitioner, and 30% to respondent.

■ We note initially that we have jurisdiction to hear this appeal. The question arises because the trial court filed a memorandum opinion on August 27, 1992, in which it stated its intention that its decision "take effect on September 1, 1992[,] regardless of whether the final judgment has been signed." The judgment for dissolution of marriage was signed and filed on September 24, 1992; respondent filed a notice of appeal of that judgment on October 1, 1992, and an amended notice, appealing from both the memorandum opinion and the judgment for dissolution, on October 20, 1992.

We believe that both notices of appeal were timely. Supreme Court Rule 272 provides in pertinent part that "[i]f at the time of announcing final judgment *** a circuit court rule requires the prevailing party to submit a draft order, *** the judgment becomes final only when the signed judgment is filed." 137 Ill. 2d R. 272.

Rule 15.03(a) of the Circuit Court of the Eighteenth Judicial Circuit requires the prevailing party to submit a draft judgment for signature on the date of decision. (18th Jud. Cir. R. 15.03(a) (1987).) On September 24, 1992, petitioner submitted a draft judgment, which the trial court signed and filed. Thus, the judgment for dissolution entered on September 24, 1992, was the final judgment of the circuit court for purposes of appeal.

We further note our finding that a petition for attorney fees filed against respondent by respondent's former counsel did not render this appeal premature. On the day it entered its marriage dissolution decree, the trial court also granted respondent's prior counsel leave to withdraw and to file a petition for attorney fees. The fee petition was filed on October 21, 1992.

This court has held that attorney fees cannot be deemed collateral or incidental to a marriage dissolution decree and must be allocated as a prerequisite to a final, appealable judgment. (*In re Marriage of Derning* (1983), 117 Ill. App. 3d 620.) In the instant case, the trial

court apportioned fees between respondent and petitioner in its judgment for dissolution. Respondent was ordered to pay $20,000 of petitioner's attorney fees and to be responsible for his own. Respondent's prior counsel sought fees solely from respondent as a former client. The determination of the reasonableness of fees for payment by respondent to his former attorney does not affect the previous apportionment of attorney fees between the parties, nor does it affect the finality of the judgment for dissolution of marriage.

Respondent first contends that the trial court abused its discretion by not allowing relevant testimony of the children's therapist, Daniel Lippmann. Specifically, respondent argues that it was error to allow Lippmann to claim the privilege of confidentiality when he had the consent of one of the parents, *i.e.*, respondent.

Section 602(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) lists seven, nonexclusive factors that the court must consider in order to determine custody in accordance with the best interest of the child. (750 ILCS 5/602(a) (West 1992).) Section 602(a)(5) requires the court to consider the mental health of the children involved. Respondent called Lippmann to testify, maintaining that, as the children's treating therapist, Lippmann possessed more current and greater knowledge of the children's health than either of the testifying experts, Dr. Gunn and Dr. Hatcher.

Early into Lippmann's testimony, Lippmann volunteered that he had an authorization to release information from respondent but that he did not have one signed by petitioner. Lippmann stated his belief that he was, therefore, limited as to his ability to answer certain questions that would invade petitioner's right to confidentiality. Following a lengthy exchange between the court and counsel over the breadth of the statutory privilege, the trial court clarified its ruling that it would not order Lippmann to answer any question which would, in Lippmann's opinion, violate the privilege of confidentiality. The court stated that there had never been a preliminary determination as to temporary custody, that the parties' expert witnesses had the benefit of consulting with Lippmann before they testified, and that the specific purpose of the statutory privilege is to make certain that "someone who's dealing with children's psychological problems is not turned into a weapon in a divorce court."

The critical issue on appeal is whether the trial court abused its discretion in barring parts of Lippmann's testimony on the basis that the written consent of both custodial parents was required.

The privilege of confidentiality in information and communications made in the course of Lippmann's treatment of the children is gov-

erned by the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/1 *et seq.* (West 1992)). Several pertinent provisions of that act must be read together. Section 3(a) provides:

> "All records and communications shall be confidential and shall not be disclosed except as provided in this Act." (740 ILCS 110/3(a) (West 1992).)

Section 3(a) is applicable here because the word "therapist" in the Confidentiality Act means "a psychiatrist, physician, psychologist, social worker, or nurse providing mental health or developmental disabilities services." 740 ILCS 110/2(9) (West 1992).

Section 5(a) provides in pertinent part:

> "[R]ecords and communications may be disclosed to someone other than those persons listed in Section 4 of this Act only with the written consent of those persons who are entitled to inspect and copy a recipient's record pursuant to Section 4 of this Act." 740 ILCS 110/5(a)(1) (West 1992).

Section 4(a) provides in pertinent part:

> "The following persons shall be entitled, upon request, to inspect and copy a recipient's record or any part thereof:
> (1) the parent or guardian of a recipient who is under 12 years of age." (740 ILCS 110/4(a)(1) (West 1992).)

"Parent" is defined in the Confidentiality Act as "a parent or, in the absence of a parent or guardian, a person in loco parentis." 740 ILCS 110/2(5) (West 1992).

We believe that, taken together, these provisions establish that the Confidentiality Act requires the consent of only one parent. As the Appellate Court, First District, reasoned in *In re Marriage of Markey* (1991), 223 Ill. App. 3d 1055:

> "The plain meaning of the word 'parent' means either mother or father, and not both. Moreover, the plain meaning of the word 'parent' in the statute means either mother or father without regard to which one of the parents may have legal custody of the child. Thus, the fact that the parties had joint custody of the child in the present case is not relevant to the issue before us." (*Markey*, 223 Ill. App. 3d at 1058.)

Although the *Markey* court cites a version of section 5(a) before it was amended, effective September 11, 1990, the additional references in the amended provision do not affect the statute's plain meaning.

The *Markey* court further states:

> "It is plain that the best interest of the child is served if in the process of determining the best interest of a child in a cus-

tody proceeding the trial court assays all of the mental health and developmental disabilities records and communications of the child so that the trial court can be fully apprised of the child's mental health and developmental disabilities. To require the consent of both parents or the custodial parent to waive the privilege of confidentiality frustrates rather than fosters this objective in custody proceedings." *Markey*, 223 Ill. App. 3d at 1058-59.

Petitioner concedes that much of respondent's argument against the custody award revolves around his belief that petitioner and Ivanoff were having an affair and his claim that the children were being harmed. Petitioner nevertheless argues that the privilege was invoked by Lippmann infrequently and that respondent failed to obtain a ruling on the privilege claim on most of those occasions. Petitioner further asserts that, on the two occasions when respondent attempted offers of proof, petitioner's objections were properly sustained because respondent's questions attempted to elicit inadmissible hearsay or nonprobative evidence. Petitioner contends that, by failing to effect offers of proof or to request *in camera* examinations of the privileged material, respondent did not meet his burden of "indicat[ing] to the trial court, opposing counsel and a court of review the nature and substance of the evidence offered." *In re Marriage of Strauss* (1989), 183 Ill. App. 3d 424, 428.

■ Petitioner's arguments are unavailing in light of our threshold determination that the Confidentiality Act requires the consent of only one parent. The trial court's insistence that both parents must have consented appears to have had an unduly restrictive effect upon Lippmann's testimony and upon respondent's ability to make effective offers of proof. The fact that the trial court did not become acquainted with the whole of Lippmann's potential input, together with the fact that an insufficient record exists to enable this court to determine whether the exclusion of Lippmann's testimony was erroneous, has its basis, we believe, in the trial court's misinterpretation of the parental consent provisions of the Confidentiality Act.

While not disputing that Lippmann's testimony might be especially valuable, the trial court stated its satisfaction that Lippmann's material was accessible to the court through the parties' expert witnesses. The trial court further stated that had the expert witnesses not talked to Lippmann in formulating their opinions, it would have ruled differently on the question of confidentiality.

Respondent's expert witness, Dr. Gunn, saw the children once, in October 1989. Except for one session in February 1991, petitioner's

expert witness, Dr. Hatcher, saw the children between November 1989 and January 1990, and then only twice. By contrast, Lippmann saw both children almost weekly from September 1989 to December 1991.

The record reveals that Dr. Gunn and Dr. Hatcher each spoke only once on the telephone with Lippmann, and their respective conversations occurred in November 1989 and November 1990. Accordingly, the experts did not consult with Lippmann about a substantial portion of his work with the children. Moreover, the trial court did not permit Dr. Gunn to testify as to his determinations based on his consultations with Lippmann; rather, the court reminded counsel for respondent that Lippmann himself would be called to testify.

The trial court's interpretation of the Confidentiality Act to require the consent of both parents resulted in an abuse of its discretion. We reverse the court's order awarding custody to petitioner and remand for reconsideration of Lippmann's testimony in accordance with the statutory interpretation set forth above.

The final issue raised by the appellant also requires reversal of the trial court's order. Respondent challenges certain of the trial court's determinations with respect to property. Specifically, respondent challenges the trial court's classification of the common stock as marital property and its conclusion as to the value of the tire business.

A total value of $18,500 was assigned to 100 shares of Commonwealth Edison stock and 60 shares of Quaker Oats stock, all of which the trial court classified as marital property. We agree with respondent that the stock should have been classified as nonmarital property.

The Act includes among its definitions of nonmarital property "property acquired by gift" and "property acquired before the marriage." (750 ILCS 5/503(a)(1), (a)(6) (West 1992).) Although petitioner argues that there were more than 100 shares of Commonwealth Edison stock involved, she concedes on appeal that any error of classification relates only to the 100 shares at issue. The 100 shares of Commonwealth Edison stock were acquired by respondent in 1978, more than four years prior to the marriage, and the stock was titled in the names of respondent and respondent's mother.

Although petitioner testified that she purchased the 60 shares of Quaker Oats stock during the marriage with money provided by respondent's mother, the certificate for this stock was issued to respondent and his mother as joint tenants. The creation of a joint account by a parent with the right of survivorship in a child creates a presumption of a valid gift to the child as the surviving joint tenant.

(*In re Estate of Friedman* (1984), 123 Ill. App. 3d 82, 85.) The presumption is not conclusive, but the burden is upon the one who challenges the gift to present clear and convincing evidence of the absence of a donative intent. *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 555.

Petitioner states that the funds used to purchase the Quaker Oats stock were given to her by respondent's mother, an assertion supported only by petitioner's testimony at trial. We believe that the evidence does not overcome by clear and convincing evidence the presumption that respondent's mother intended to make a gift of the stock to respondent through the creation of a joint account with the right of survivorship in him. Therefore, we find that the trial court erred in classifying the Quaker Oats stock, as well as the Commonwealth Edison stock, as marital property.

Petitioner contends that any classification error is *de minimis* and harmless. In support, petitioner cites *In re Marriage of Benefield* (1985), 131 Ill. App. 3d 648, in which the reviewing court found that the trial court's dual classification of property as part marital and part nonmarital was erroneous but harmless, and *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, in which the reviewing court found that a misclassification was not prejudicial. The reasoning relied upon in both cases was that reversal and retrial would only result in the same decision. (*Benefield*, 131 Ill. App. 3d at 649-50; *Wilder*, 122 Ill. App. 3d at 345.) We cannot say in the instant case that the proper classification of $18,500 worth of stock would result in the same distribution of the marital estate.

We reach a similar conclusion with respect to the trial court's valuation of the tire business. The trial court found that D.K. Value Tire was worth $59,000. This value was based upon the opinion of petitioner's expert, who testified that, in calculating the business' liabilities, he ignored respondent's claimed indebtedness of $19,000 to Goodyear Tire Company because respondent did not document the amount. Petitioner's expert also testified that if, in fact, Goodyear was owed money, the adjusted book and fair-market value at which he had arrived would have to be reduced by the amount of that obligation.

Respondent argues that petitioner's failure to consider all of the liabilities of the business was improper. Respondent's own valuation expert opined that the business had no value. Therefore, according to respondent, the trial court's finding that the value of D.K. Value Tire was $59,000 was against the manifest weight of the evidence.

Petitioner responds that the trial court appropriately resolved the issue by awarding the business in its entirety to respondent and by

requiring that he assume and pay its existing liabilities, including the Goodyear debt.

■■ We believe it was error for the trial court to leave the valuation of the tire business at $59,000 after finding that the $19,000 Goodyear debt existed and after hearing the testimony of petitioner's expert that he would adjust his valuation for that amount. We cannot say that a valuation difference of $19,000 would result in the same property distribution, especially when coupled with the improper classification of $18,500 worth of stock. Therefore, we remand for reclassification of the common stock as nonmarital property and revaluation of the tire business in light of the Goodyear liability.

In his reply brief, respondent makes further arguments supporting his contention that the property distribution was against the manifest weight of the evidence. Respondent states that his valuation expert reviewed more recent documents than petitioner's expert and that respondent and another witness testified to the decline in the value of the business in the time after petitioner's expert made his valuation. Respondent asserts that the valuation should have been zero. Respondent further contends that a savings account, valued at $12,000, was improperly awarded to respondent, since a court order of October 25, 1989, permitted petitioner to use the account for her needs and for those of the children and to pay the mortgage on the marital home; according to respondent, the account was "dissipated" by petitioner prior to trial.

Petitioner moves to strike these parts of respondent's reply brief on the ground that the points argued were not raised in respondent's original brief and, therefore, are waived. (See 134 Ill. 2d R. 341(e)(7); *Standard Bank & Trust Co. v. Callaghan* (1991), 215 Ill. App. 3d 76, 81; *Gavery v. County of Lake* (1987), 160 Ill. App. 3d 761, 767.) Respondent contends that, because petitioner argued in her brief that the valuation effectively assigned to the tire business and the alleged misclassification of nonmarital assets were *de minimis* and did not effect an equitable distribution, respondent's assertions were confined strictly to replying to petitioner's arguments (see 134 Ill. 2d R. 341(g)) and should not be stricken.

We agree with respondent that petitioner advanced the argument in her brief that the trial court's distribution of assets was equitable and that any error in the classification of assets was harmless. We further agree with respondent that his argument that the trial court's valuation of D.K. Value Tire was against the manifest weight of the evidence was presented in his original brief. Respondent did not argue in his original brief, however, (1) that the trial court erred by not val-

uing the business at zero and (2) that the trial court erred in attributing the value of the $12,000 savings account to respondent.

■■ We find that these new allegations of trial court error are not "confined strictly to replying to arguments presented in the brief of the appellee." (134 Ill. 2d R. 341(g).) The issues of equitable distribution and *de minimis* error are, we believe, adequately addressed in respondent's reply brief without resorting to new claims of error. Accordingly, petitioner's motion to strike those portions of respondent's reply brief is granted.

Petitioner also moves to strike portions of respondent's reply brief addressing the issue of Victor Ivanoff's alleged anti-Semitism.

Respondent notes with respect to Ivanoff that, although the children are Jewish, the trial court denied respondent's offer of proof that Ivanoff was anti-Semitic and, in his reply brief, asserts that the trial court should have taken judicial notice of Ivanoff's "conviction of the offense of telephone harassment" in 1989. Respondent then quotes a portion of the complaining witness' testimony, dated June 20, 1989, in a case entitled People v. Victor Ivanoff, No. 88—MC—4009893, in the circuit court of Cook County. Petitioner moves to strike the paragraph of respondent's reply brief containing this material.

An issue not raised or argued in the trial court is waived on appeal. (*Nugent v. Miller* (1983), 119 Ill. App. 3d 382, 387.) We agree with petitioner that respondent's judicial notice argument was not raised in the trial court and was not asserted in this court until his reply brief; therefore, the argument is waived, and petitioner's motion to strike is granted with respect to that argument and the quotation from the Cook County case. Respondent noted that the trial court denied his offer of proof that Ivanoff was anti-Semitic in his original brief as well as in his reply brief, and this observation is not a point urged upon this court. Accordingly, we do not find the comment improper and deny petitioner's motion to strike that statement from the disputed paragraph.

For the reasons stated above, we reverse the orders of the circuit court awarding custody to petitioner and classifying and distributing the marital property, and we remand this cause for further proceedings in accordance with what is stated herein.

Reversed and remanded.

GEIGER and BOWMAN, JJ., concur.