UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, Alston and Decker
Argued at Alexandria, Virginia

ANTHONY CAVALLO

v.     Record No. 0981-13-4

JOANNA CAVALLO

MEMORANDUM OPINION[*] BY
JUDGE D. ARTHUR KELSEY
FEBRUARY 25, 2014

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

John L. Bauserman, Jr. (The Bowen Law Firm, on briefs),
for appellant.

Carolyn M. Grimes (Lieblich & Grimes, P.C., on brief),
for appellee.

In this divorce case, the trial court awarded $21,000 to Joanna Cavallo (wife) pursuant to a premarital agreement between her and her husband, Anthony Cavallo.  The court also awarded wife $10,000 in attorney fees.  On appeal, husband argues both awards rest upon a flawed interpretation of the premarital agreement and an incomplete factual record.  We agree that the $21,000 monetary award must be reversed in part.   Based upon that conclusion, we remand the attorney fee award to the trial court for reconsideration.

I.

The parties married in 2009.  Two days before their marriage, they entered into a premarital agreement limiting any future rights to spousal support and equitable distribution in the event of a divorce.  In early 2011, husband left the marital home and, in early 2012, he filed for divorce.  Wife filed a cross-claim for divorce alleging adultery.  Following an evidentiary hearing, the trial court found husband guilty of adultery and granted wife's request for a divorce on this ground.  The court also ordered husband to pay child and spousal support.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At the evidentiary hearing, wife claimed the premarital agreement was unenforceable as a matter of law and, thus, she should be entitled to a statutory equitable distribution award under Code § 20-107.3. Wife argued alternatively that the premarital agreement, if enforceable, entitled her to a contractual monetary award in the event of a divorce.

Paragraph 10 of the agreement, entitled "Separate Property of Husband," identified various assets owned by husband prior to the marriage. The agreement provided that, in the event of a divorce, wife

> shall be entitled to 50% of the net increase in value of Husband's separate property . . . . Husband shall maintain and continue to own separately the current equity in his separate property. This paragraph applies only to the increase in net equity. For purposes of this paragraph, the increase in value will be determined as of the date of the parties' separation, which forms the basis for the entry of a final decree of divorce. This will not effect [sic] the deductions for determining the "net" increase, which are described below. As referenced above, the definition of "net increase in value of Husband's separate property" includes, but is not necessarily limited to:
>
> 1. deductions for all taxes;
> 2. payment of all debt accumulated during the marriage for family or household purposes;
> 3. all appraisal, accounting and legal fees necessitated by the valuation and division of property described in this paragraph; and
> 4. all administrative costs and fees directly related to the management of the separate property.

App. at 12.

Schedule A of the premarital agreement listed husband's separate property. Included on the list were four businesses in which husband had an equity interest: Millennium Entertainment, LLC, in which husband owned a 35.714% equity interest; Cavallo Enterprises, Inc., in which he owned a 50% equity interest; Vintage 51, LLC, in which he owned a 40% equity interest; and Cavallo Gelato, LLC, in which husband's equity interest was never established. Id. at 26, 296, 323, 412. Schedule A also identified the agreed value of each of

- 2 -

these four businesses at the time of agreement.[1]  Vintage 52, LLC, was not listed as husband's

separate property in the premarital agreement, but wife introduced tax returns that established

husband's 35.714% equity interest in the business.  Id. at 483.

Wife sought to prove the then-current value of husband's businesses (and thereby

establish her 50% share of any net increase in value) by calling to the stand husband's

accountant.  Wife's counsel asked the accountant to identify the "total assets" figure mentioned

on the first page of the federal income tax returns for Millenium Entertainment, LLC; Cavallo

Enterprises, Inc.; Vintage 51, LLC; and Vintage 52, LLC.  The figures came from Schedule L on

the tax returns, which consisted of IRS standard form balance sheets for the businesses reflecting

assets and liabilities, prepared under an accrual basis for Millenium Entertainment, LLC,[2] and

under a cash basis for each of the remaining businesses.[3]

The accountant went through each business's tax returns for the relevant years and

identified the "total assets" figures on the front page of each return.  Wife's counsel never asked

the accountant for an expert opinion on the actual value of any of the four businesses.  Nor did

---

[1] Husband testified that Cavallo Gelato, LLC, "never opened," Trial Tr. at 59 (Feb. 27, 2013), and wife conceded that there was "nothing to ask the Court" to award since no documents were introduced for Cavallo Gelato, LLC, App. at 194.

[2] The differences between accrual and cash-basis accounting methods can sometimes become blurred depending on their context.  For federal income tax purposes, however, "under an accrual method, income is to be included for the taxable year when all the events have occurred that fix the right to receive the income and the amount of the income can be determined with reasonable accuracy.  Under such a method, a liability is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability."  26 C.F.R. § 1.446-1(c)(1)(ii)(A) (2013).

[3] The distinction on the tax returns of accounting methods for Millenium Entertainment, LLC, and the remaining businesses is curious because the profit and loss statements prepared and introduced by husband at the evidentiary hearing also identify accrual basis as the accounting method for Vintage 51, LLC, and Vintage 52, LLC.  App. at 274-79.

the accountant imply that the "total assets" figures (without also taking into account each business's liabilities) could serve as a proxy for valuing any of the businesses.

During closing arguments, wife's counsel argued that the "accountant testified that the IRS tax returns he prepared and submitted to the IRS for [husband] contained a balance sheet and a statement of the *net value* of assets." Id. at 192 (emphasis added). Wife's counsel then took the IRS total assets figures from the tax returns, calculated the increase in value, determined husband's equity interest in the increased value, and then requested from the court an award of 50% of that increase pursuant to paragraph 10 of the premarital agreement.

Wife's counsel also argued for an award of attorney fees based upon the "prenup, because we are seeking to enforce it. This is an enforcement action. There is a term in the prenup to enforce it for her to have attorneys fees." Id. at 206. Counsel, however, further explained:

> His conduct has created a massive amount of attorneys fees. At least 50 percent of the attorneys fees in this case have been spent on trying to get him to answer discovery and figure out his income. The property issues are actually small, maybe only 15 percent, the custody about 35 percent. So that's what we're seeking Your Honor.

Id. at 207.

In reply, husband's counsel argued that the "total assets" figure on the tax returns did not take into account the liabilities of each of the businesses and, thus, could not be the basis for valuing husband's equity interest in the businesses. Because wife presented no other evidence sufficient to establish the value of the businesses, husband's counsel argued, she could not succeed in her claim under paragraph 10 of the premarital agreement for 50% of any alleged increase in husband's equity interests in the businesses. Husband argued against an award of attorney fees on the ground that wife could not succeed with her claim under the premarital agreement, and, in any event, the agreement waived any future claims for attorney fees.

- 4 -

In its ruling, the trial court held the premarital agreement was enforceable.  Thus, the agreement — not the equitable distribution statute — governed the parties' property rights. Addressing paragraph 10 of the agreement, the court acknowledged that there was "no reliable evidence of any current values or of any increase or decrease in values of the [businesses] other than tax returns for the business[es]."  Id. at 229.  The court said the absence of more reliable evidence was "due in great part" to husband's earlier failure to make complete disclosures during discovery.  Id.[4]  The court later commented, "In looking at the value of these businesses, the tax returns and the checks were of little help without the business records."  Id. at 233.

Lacking better evidence of the businesses' values, the court stated it was at the "very least skeptical about what the tax returns tend to show."  Id. at 235.  Despite these findings, the court adopted wife's "asset value" methodology and awarded her $21,000 on her claim under paragraph 10 of the premarital agreement.  Id.  The total monetary award under the premarital agreement also included 50% of the undisputed increase in value of husband's whole life insurance policy, which amounted to $3,087.50.  Id. at 234; Appellant's Br. at 12.

Concerning wife's claim for attorney fees, the trial court stated that the fee affidavit from wife's counsel (seeking fees in excess of $40,000) made it "difficult . . . to tell what attorney's fees were for what, i.e., specifically motions to compel."  App. at 239.  The court nonetheless awarded $10,000 in attorney fees to wife, finding it "fair considering the relative incomes of the parties, their current assets and the equitable distribution of the property under the prenup."  Id.

The court's final divorce order incorporated these rulings by reference.  Id. at 47.

---

[4] Based on these discovery violations and husband's conduct during the course of the proceedings, the trial court found "that [husband] lacks any credibility in this case."  App. at 234. Each discovery violation resulted in a motion to compel.  Attorney fees, totaling $6,761.83, were subsequently awarded for husband's failure to comply with discovery.  R. at 207, 280.

II.

On appeal, husband contends the trial court erred as a matter of law in making a monetary award to wife pursuant to paragraph 10 of the premarital agreement and likewise erred in awarding her $10,000 in attorney fees. We agree with his first argument and withhold judgment on his second.

A. WIFE'S CLAIM UNDER THE PREMARITAL AGREEMENT

Code § 20-150 provides that parties may enter into premarital agreements with respect to "'[t]he disposition of property upon separation [or] marital dissolution.'" Gaffney v. Gaffney, 45 Va. App. 655, 666, 613 S.E.2d 471, 477 (2005) (alteration in original) (quoting Code § 20-150); see also Code § 20-107.3(I) ("Agreements, otherwise valid as contracts, entered into between spouses prior to the marriage shall be recognized and enforceable."). A premarital agreement dictating the distribution of marital and separate property, if legally valid, supersedes the remedies available under the equitable distribution statute and precludes a trial court from tailoring a discretionary monetary award to the statutory factors outlined in Code § 20-107.3(E).

In Virginia, premarital agreements "'should be interpreted and enforced no differently than any other type of contract.'" Vilseck v. Vilseck, 45 Va. App. 581, 588, 612 S.E.2d 746, 749 (2005) (quoting Smith v. Smith, 43 Va. App. 279, 286-87, 597 S.E.2d 250, 254 (2004)). Words and phrases used in contracts "'are normally given their usual, ordinary, and popular meaning.'" TravCo Ins. Co. v. Ward, 284 Va. 547, 552, 736 S.E.2d 321, 325 (2012) (quoting City of Chesapeake v. States Self-Insurers Risk Retention Grp., 271 Va. 574, 578, 628 S.E.2d 539, 541 (2006)). "That meaning, of course, derives from the text as well as the context of the agreement." Cabral v. Cabral, 62 Va. App. 600, 610, 751 S.E.2d 4, 13 (2013).

In this case, the contested provision of the premarital agreement gives wife a contractual right, upon divorce, to receive "50% of the net increase in value of Husband's separate

property." App. at 12. Husband's "separate property," to the extent relevant here, was his ownership interests in four businesses. Thus, the contractual provision "applies only to the increase in net equity" that husband has in the four businesses at issue. Id. To prevail under this provision, therefore, wife had to prove the actual value of the four businesses as a factual predicate to establishing her 50% share of husband's equity interests in these businesses.

Courts have recognized various methodologies for appraising the value of a business enterprise. See 2 Brett R. Turner, Equitable Distribution of Property §§ 7:19-7:29, at 711-59 (3d ed. 2005). The most common are the income-capitalization, the market-based, and the asset-based models. The income-capitalization model projects future income and discounts it back to present value using a capitalization rate. See, e.g., Owens v. Owens, 41 Va. App. 844, 850, 589 S.E.2d 488, 491 (2003). The market-based approach determines value based on acquisitions of comparable businesses. See, e.g., Bosserman v. Bosserman, 9 Va. App. 1, 8, 384 S.E.2d 104, 109 (1989).

The asset-based model, sometimes called the "total value" method, establishes a business's value by subtracting the business's liabilities from the value of its assets. See 2 Turner, *supra* § 7:22, at 723 (In addition to valuing assets, "the court must also value all of the business' liabilities.").[5] Variations on the asset-based model take into account differing initial conditions, such as whether the business is a going-concern, is facing imminent liquidation, or whether its assets can be disaggregated to maximize value. See generally Howell v. Howell, 31 Va. App. 332, 339, 523 S.E.2d 514, 517-18 (2000) ("The parties must rely on accepted methods

---

[5] See, e.g., Shooltz v. Shooltz, 27 Va. App. 264, 275-76, 498 S.E.2d 437, 442-43 (1998); Bosserman, 9 Va. App. at 9, 384 S.E.2d at 109; see also Lipsitt v. Lipsitt, 580 So.2d 174, 174 (Fla. Dist. Ct. App. 1991); In re Marriage of Kerman, 624 N.E.2d 870, 876 (Ill. App. Ct. 1993); Robison v. Robison, 691 P.2d 451, 454-55 (Nev. 1984); Grossman v. Grossman, 638 N.Y.S.2d 130, 132 (N.Y. App. Div. 1996); Johnson v. Johnson, 674 P.2d 539, 544 (Okla. 1983); Stewart v. Stewart, 550 S.E.2d 86, 91 (W. Va. 2001); Forester v. Forester, 496 N.W.2d 771, 776-77 (Wis. Ct. App. 1993).

of valuation, but the particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples.").

In litigation involving contested business valuations, the parties usually present appraisal testimony from valuation experts experienced in the pertinent financial and accounting standards. In this case, however, wife did not present any expert testimony on the value of the businesses in which husband had an equity interest. Instead, apparently believing she was employing an asset-based valuation model, wife's counsel merely asked husband's accountant to read into the record the "total assets" figures on the first page of each of the businesses' tax returns. The accountant, however, never opined that the "total assets" figures represented the present net values of these businesses. He was never asked that question. The only question he was asked, and the only one he answered, was whether the "total assets" figures represented the value of the businesses' *assets*. The issue before the trial court, however, was not the value of the businesses' assets but the value of the *businesses* themselves.

The *non sequitur* in wife's argument is that one can value a business by appraising its assets while ignoring its liabilities. Her position at trial rested entirely upon this flawed premise. Each of the tax returns relied upon by wife make clear the "total assets" figures on the first page of the returns come directly from the attached Schedule L — which identifies itself as the "Balance Sheets per Books." See, e.g., App. at 293, 320, 406, 478. Without exception, the various Schedule L balance sheets separately state the assets, liabilities, and capital for each business.

To use but one example, Schedule L accompanying Millennium Enterprises, LLC's federal tax return for 2009 shows "Total assets" at the end of the year valued at $293,164. Id. at 320. But various liabilities in excess of that figure drive the capital account figure to negative

$143,854. In other words, the liabilities exceed the assets by $143,854. "Where a business has more debts than assets, its value under the total value method is zero." 2 Turner, *supra* § 7:22, at 724. Yet, under wife's truncated asset-valuation model, the business that year had a positive value of $293,164. This conceptual error was systemic in wife's valuation argument for all four businesses.

On appeal, wife defends the trial court's decision by correctly pointing out that husband "presented no evidence of any other value of the assets to the Court." Appellee's Br. at 6 (emphasis omitted). Husband should lose on appeal, wife continues, because he "simply did not present an evidentiary case on this point, the main crux of his appeal." Id. This contention seizes upon an important principle, one crucial to the structure of the appellate process. But its application to this case produces the opposite result than the one wife seeks.

It is true that an appellant, by seeking relief from an appellate court (usually a reversal of the lower court decision), has the burden of persuasion on appeal. As we have often said, "[a]bsent clear evidence to the contrary in the record, the judgment of a circuit court comes to an appellate court with a presumption that the law was correctly applied to the facts." Damon v. York, 54 Va. App. 544, 555, 680 S.E.2d 354, 360 (2009) (internal quotation marks omitted). But this appellate burden of proof, so to speak, incorporates — but does not supersede — the underlying burdens of proof applicable in the trial court. In cases in which a claimant with the burden of proof prevails at trial, the losing party can succeed on appeal merely by showing that the winner at trial failed to present a *prima facie* case. It is wholly unnecessary for the challenger on appeal to show that he could have disproved the claimant's assertions or, for that matter, that the assertions were in fact untrue.

This structural premise undermines wife's position on appeal. It is irrelevant that husband did not establish the enhanced value (if any) of his equity interests in the four disputed

businesses.  He was not seeking a contractual award from the trial court.  Because wife claimed

she had a contractual right under the premarital agreement to a pecuniary award, she alone had

the burden of proving both her right to the award and a reasonable basis for the trial court to

calculate the amount of the award.  Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550

(1987) ("When the party with the burden of proof on an issue fails for lack of proof, he cannot

prevail on that question."); Morris v. Morris, 3 Va. App. 303, 308, 349 S.E.2d 661, 664 (1986).[6]

Having established neither ground for an award, wife failed as a matter of law to present

a *prima facie* case.  See, e.g., Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 156-57, 671

S.E.2d 132, 136-37 (2009) (failing to "prov[e] with reasonable certainty the amount of damages

and the cause from which they resulted" did not "establish a *prima facie* claim for breach of

contract"); Stockdale v. Stockdale, 33 Va. App. 179, 184, 532 S.E.2d 332, 335 (2000) (stating

that a *prima facie* case is established by "evidence sufficient as a matter of law to enable a

rational fact finder to find that a particular proposition of fact is true").  To prevail on appeal,

husband need only persuade us of this conclusion.  He succeeded in doing so.

### B.  WIFE'S CLAIM FOR ATTORNEY FEES

At trial, wife's counsel sought an award of attorney fees based upon the "prenup, because

we are seeking to enforce it.  This is an enforcement action.  There is a term in the prenup to

enforce it for her to have attorneys fees."  App. at 206.[7]  The fees requested were incurred

---

[6] See also Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 5-1[b], at 299 (7th ed. 2012) ("[T]o meet the burden of production, a party must produce a quantum of evidence sufficient to support a finding on the issue or point for which the evidence is being offered.").

[7] Paragraph 17 of the agreement provides:  "Each party waives and releases the other from any claims for attorney fees and costs associated with the preparation of this Agreement and any divorce or separation.  In the event that either party defaults in the performance of any obligation under this Agreement, the defaulting party shall pay all reasonable counsel fees and costs incurred by the other in seeking the enforcement of this Agreement."  App. at 20.

between December 2011 through the end of the trial court proceedings. Though the total amount requested exceeded $45,000, wife's counsel qualified her request at trial with this explanation:

> [Husband's] conduct has created a massive amount of attorneys fees. At least 50 percent of the attorneys fees in this case have been spent on trying to get him to answer discovery and figure out his income. The property issues are actually small, maybe only 15 percent, the custody about 35 percent. So that's what we're seeking Your Honor.

Id. at 207. In its ruling, the trial judge stated: "When I reviewed the attorney's fees, it was difficult . . . to tell what attorney's fees were for what, i.e., specifically motions to compel." Id. at 239. Despite this difficulty, however, the court awarded $10,000 in fees. The trial judge stated:

> Well, I think at this point, what I am going to do is award her $10[,]000.00 in attorney's fees based on what I could ferret out from the attorney's fees. I think that some of this was for defending the prenuptial, so there is not a total win in this case. So, I feel that is fair considering the relative incomes of the parties, their current assets and the equitable distribution of the property under the prenup.

Id.

As discussed earlier, however, wife should not have prevailed in her claim pursuant to paragraph 10 of the premarital agreement. Because wife failed to support her claim with a *prima facie* factual showing of the value of husband's businesses, the trial court erred in making a contractual award under paragraph 10. It follows that she was not entitled to attorney fees in her unsuccessful effort to enforce the agreement. Based on the trial court's comments, the partial fee award to some extent related to wife's monetary claim under the premarital agreement, and, to that extent, the court erred.

Wife's claim under the premarital agreement, however, was not her only claim. Husband argues that does not matter because the same provision in the premarital agreement that authorizes prevailing party fees also waives any claims for fees and costs "associated with . . .

- 11 -

any divorce or separation." Id. at 20. Wife's claims for spousal and child support,[8] husband contends, were associated with the divorce proceeding and thus subject to the fee waiver provision. In response, wife argues that the fee waiver provision only applies to litigation surrounding the grounds for divorce and separation but not to independent claims for spousal and child support. Wife also adds that some portion of the fee award could have been allocated to the court's earlier entry of a consent decree awarding physical custody of the child to wife.[9]

We cannot on appeal bring these point-counterpoint arguments to closure because the trial court never explained the basis for the partial award of attorney fees. If it was solely for wife's claim for a monetary award under paragraph 10 of the premarital agreement, the partial attorney fee award would be wholly invalid — thereby mooting the validity of the other hypothetical bases for the award. If the award was based in whole or in part on fees incurred by wife proving husband's adultery as the grounds for the divorce, that fact would moot the parties' dispute over the scope of the fee waiver provision. Similar uncertainties surround the question whether the partial award compensated wife for fees she incurred pursuing her claims for child support and custody[10] and spousal support.

---

[8] Code § 20-150(4) authorizes premarital agreements to determine spousal support in the event of divorce. The premarital agreement in this case precluded any later award of spousal support if the marriage failed to last longer than a year. See App. at 10. The agreement also specifically stated it had no applicability to any future claims for child support. Id.

[9] Husband asserts on appeal that principles of *res judicata* precluded the trial court from making any fee award for the custody dispute because that was resolved earlier in the litigation. We disagree. *Res judicata* applies only to final judgment, not interlocutory decrees. Rule 1:6.

[10] The parties do not brief, and thus we do not decide, whether a premarital agreement may validly waive attorney fees related to litigation over child support or custody. See generally Lawlor v. Commonwealth, 285 Va. 187, 258, 738 S.E.2d 847, 888 (2013) ("We consider only arguments within the scope of the assignment of error."); Kirby v. Commonwealth, 264 Va. 440, 444-45, 570 S.E.2d 832, 834 (2002) (refusing to consider an argument when "counsel did not lay his finger on the error" (internal quotation marks omitted)); Yeatts v. Murray, 249 Va. 285, 290, 455 S.E.2d 18, 21 (1995) ("The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which

It would be injudicious for us to cycle through each of these possibilities and to render an advisory opinion on the legal viability of each one. "'Advisory opinions represent an attenuate exercise of judicial power,' one which we traditionally avoid in all but the most extenuating circumstances." Pilson v. Commonwealth, 52 Va. App. 442, 446, 663 S.E.2d 562, 564 (2008) (quoting Va. Dep't of State Police v. Elliott, 48 Va. App. 551, 553, 633 S.E.2d 203, 204 (2006)). We thus reverse the partial fee award and remand it to the trial court with instructions to reconsider the request for attorney fees in light of our partial reversal of the $21,000 award under the premarital agreement. While doing so, the court should specifically state the basis for any new fee award and rule on any objections the parties may assert to the court's reconsidered decision.[11]

### III.

Because wife failed to present a *prima facie* factual case in support of her claim that husband's businesses increased in value, the trial court erred in awarding $17,912.50 of the $21,000 monetary award to wife under the premarital agreement.[12] Because this error directly affected the trial court's partial attorney fee award, we reverse the fee award and remand it for reconsideration consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

---

appellant intends to ask a reversal of the judgment, and to limit discussion to these points." (internal quotation marks omitted)).

[11] Wife's counsel argued at trial that "50 percent of the attorneys fees in this case have been spent on trying to get him to answer discovery and figure out his income," App. at 207, but the trial court awarded attorney fees prior to trial compensating wife for husband's discovery violations, see *supra* note 4.

[12] We affirm, however, the remaining $3,087.50, which represents the undisputed increase in husband's whole life insurance policy. Appellant's Br. at 12 (conceding that "the husband does not for purposes of this appeal contest the discrete part of the award of $3,087 which the Court made with regard to the increase in value of the State Farm whole life policy").