PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judge Kelsey and Senior Judge Bumgardner
Argued at Richmond, Virginia

JULIO FERNANDO CABRAL

v.    Record No. 0694-13-1

DEBBIE ANN SILVEIRA CABRAL

                                                    OPINION BY
DEBBIE ANN SILVEIRA CABRAL              JUDGE D. ARTHUR KELSEY
                                                DECEMBER 10, 2013

v.    Record No. 0713-13-1

JULIO FERNANDO CABRAL

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

Kevin E. Martingayle (Bischoff Martingayle, P.C., on
briefs), for Julio Fernando Cabral.

Christy L. Murphy (James A. Evans; Kaufman &
Canoles, P.C.; Evans & Bryant, PLC, on briefs), for
Debbie Ann Silveira Cabral.

In these consolidated appeals, Julio Fernando Cabral contends the trial court erred by

reopening a divorce case that had been closed since 2009 and by making an equitable

distribution award and an award of attorney fees to his former wife, Debbie Ann Silveira Cabral.

She also appeals, claiming the trial court erred by undervaluing a disputed asset and by awarding

some, but not all, of her attorney fees. Because the trial court erred by reopening the case in the

first place, we reverse the awards of equitable distribution and attorney fees.

I.

After thirteen years of marriage and two children, Julio and Debbie Cabral filed for

divorce in 2007. Represented by experienced counsel, the parties entered into a "Final and

Permanent Separation, Custody, Support and Property Settlement Agreement" that resolved all

contested issues in the case. The trial court entered a final decree in 2009 that ratified, confirmed, and incorporated by reference, but did not merge, the settlement agreement. The preamble of the seventeen-page agreement states its intent, among other things, to "fully satisfy all obligations which each of the parties now has or might hereafter have toward the other" and "to finally determine and settle their property rights" arising out of the marriage. App. at 24.

The settlement agreement thereafter divides between the parties a considerable number of assets, including the marital home, a beach house, two undeveloped lots in Williamsburg, a condo in Portugal, property in the Azores, and equity interests in several businesses. Based upon this agreed division of assets, both parties agreed to "waive any right or entitlement to seek an award of equitable distribution from the other." Id. at 30-31.

Immediately following this waiver, however, is a curious caveat: "The parties acknowledge that all assets have been disclosed and they are referred to in this Agreement. Any undisclosed or omitted assets shall be subject to an equitable distribution hearing and this matter may be reopened as to such property." Id. at 31. The agreement also includes a provision awarding attorney fees to the prevailing party under certain conditions in later litigation arising out of the agreement.

The trial court reopened the proceeding in 2010 at the request of Debbie Cabral, who sought to enforce various provisions of the settlement agreement. While the matter remained on the court's docket, Debbie Cabral filed a "Motion for Equitable Distribution." R. at 294.[1] She claimed her former husband committed "multiple fraudulent misrepresentations" and failed to disclose an asset during the negotiations preceding the settlement agreement. Id. "In fact," she

---

[1] The parties failed to include the "Motion for Equitable Distribution" in the joint appendix. See Rule 5A:25(c)(1) (requiring the appendix to include "the basic initial pleading"); Rule 5A:25(h) (noting the assumption "that the appendix contains everything germane to the assignments of error"). We nonetheless take note of the motion under our authority to review the entire record, not just the portion included in the joint appendix. See Rule 5A:25(h).

alleged, "Husband lied during the divorce litigation in an attempt to hide the undisclosed asset." Id. at 295. The asset Julio Cabral allegedly failed to disclose was a $1.85 million "account receivable" owned by Sunset Development, LLC, a real estate holding company in which he had a 50% interest. Id. The account receivable was created when the company loaned $1.85 million to another member who owned the remaining 50% interest.

In 2011, the trial court entered an order specifically reinstating the case to the docket to address the equitable distribution motion. At the hearing on the motion, Debbie Cabral's counsel withdrew the allegation of fraud and argued instead that, even if non-fraudulent, Julio Cabral's failure to disclose the account receivable triggered the settlement agreement's provision authorizing the trial court to reopen the case for equitable distribution of the asset.

In response, Julio Cabral argued that he merely owned a 50% interest in Sunset Development, LLC. He had no ownership interest in the account receivable owned by the company, and thus, as a matter of law, it could not be considered a marital asset subject to equitable distribution. Even if it could be considered a marital asset, he continued, the court had no authority to reopen the case to distribute the asset because the divorce decree ending the case had long since become final under Rule 1:1.

The trial court agreed with Debbie Cabral, reasoning that "it didn't really matter per se whether it was an LLC or a corporation or a sole proprietorship. It's still a marital asset because people accumulate wealth, and they put that wealth in different entities." App. at 431. Based upon this reasoning, the court held that Julio Cabral failed to "disclose a marital asset, to wit: an account receivable . . . owned by Sunset Development, LLC, of which entity [Julio Cabral] owned 50% at the time of the parties' divorce." Id. at 439. That conclusion, the court added, made the "account receivable of Sunset Development, LLC" subject to equitable distribution. Id.; see also id. at 2019 (describing the asset as "an account receivable of Sunset Development,

- 3 -

LLC"). After hearing evidence on valuation, the court made an "equitable distribution award" of $329,000 to Debbie Cabral. Id. at 2020. The court also awarded her $60,000 in attorney fees, id., based upon a provision in the settlement agreement authorizing an award of attorney fees to the prevailing party in further litigation of the agreement.

II.

Both parties appealed the trial court's final order. Julio Cabral challenges both the trial court's equitable distribution award and the award of attorney fees. He contends the trial court violated Rule 1:1 and thereby acted outside its subject-matter jurisdiction, misinterpreted the language of the settlement agreement, established an incorrect valuation date, and misvalued and erroneously distributed the asset. Debbie Cabral appeals her equitable distribution award and her award of attorney fees, claiming the trial court in both instances awarded less than what she was entitled to receive.

While each of these arguments implicates a cascading series of issues, we find one line of reasoning to be dispositive: Because Sunset's account receivable was not a marital asset, it was not subject to equitable distribution. The trial court erred in concluding otherwise, and, by doing so, it acted outside its lawful authority. It necessarily follows that the court likewise erred in making an award of attorney fees to Debbie Cabral.

A. RULE 1:1 & SUBJECT-MATTER JURISDICTION

With certain exceptions not relevant here, Rule 1:1 provides that such orders "shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." This rule governs final divorce decrees no less than any other final order of the circuit court. See, e.g., Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987); Zhou v. Zhou, 38 Va. App. 126, 132, 562 S.E.2d 336, 339 (2002).

- 4 -

Though sometimes called a limitation on "subject matter jurisdiction," <u>Kelley v. Stamos</u>, 285 Va. 68, 79, 737 S.E.2d 218, 224 (2013), Rule 1:1 serves only as a mandatory procedural precondition to the trial court's lawful exercise of its authority.[2]  In Virginia, procedural rules of court are solely the pronouncements of the judiciary.  <u>See</u> Va. Const. art. VI, § 5 (authorizing the Virginia Supreme Court to promulgate rules of practice and procedure); Code §§ 8.01-3, 16.1-69.32, 17.1-403, 17.1-503.  Judicially created procedural rules cannot expand or contract the subject-matter jurisdiction of the courts.

Subject-matter jurisdiction is about power, not simply the proper use of it.  Courts are not self-conceived and, thus, do not *create* their own judicial power.  Only the Constitution and the legislature can do that.  <u>See</u> Va. Const. art. VI, § 1 (providing that, subject to constitutional limits, "the General Assembly shall have the power to determine the original and appellate jurisdiction of the courts of the Commonwealth"); <u>see</u> <u>also</u> <u>Bd. of Supervisors v. Bd. of Zoning Appeals</u>, 271 Va. 336, 344, 626 S.E.2d 374, 379 (2006); <u>Shelton v. Sydnor</u>, 126 Va. 625, 629, 102 S.E. 83, 85 (1920); <u>Swalef v. Anderson</u>, 50 Va. App. 100, 106 n.4, 646 S.E.2d 458, 461 n.4 (2007).  Nor can courts claim they are powerless to exercise judicial power properly delegated to them.  Because the very "existence of the jurisdiction creates an implication of duty to exercise it," <u>Howlett v. Rose</u>, 496 U.S. 356, 373 (1990) (internal quotation marks omitted), courts have a "strict duty to exercise the jurisdiction" conferred upon them, <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996), unless extraordinary circumstances warrant otherwise.

---

[2] Although the nomenclature adds little clarity, sometimes mandatory procedural preconditions in the Rules are said to implicate a court's "active jurisdiction," <u>Davis v. Commonwealth</u>, 282 Va. 339, 339, 717 S.E.2d 796, 796-97 (2011), which, we believe, should be distinguished from "subject-matter" jurisdiction, <u>Whitt v. Commonwealth</u>, 61 Va. App. 637, 649, 739 S.E.2d 254, 260 (2013) (*en banc*).  Violations of rule-based preconditions in the active jurisdiction category rarely cause an order to be deemed void *ab initio*; violations in the subject-matter jurisdiction category always do.  Given our holding, however, we need not tease out of the precedents a single, unifying vocabulary for these often confused concepts.

It is true that we treat orders in violation of Rule 1:1 as "void ab initio." Burrell v. Commonwealth, 283 Va. 474, 480, 722 S.E.2d 272, 275 (2012). We do so not because the court issuing the order acted outside its subject-matter jurisdiction but because "the mode of procedure used by the court was one that the court 'could not lawfully adopt.'" Kelley, 285 Va. at 75, 737 S.E.2d at 222 (quoting Singh v. Mooney, 261 Va. 48, 51-52, 541 S.E.2d 549, 551 (2001)). This is simply another way of saying that, at some point, an unlawful exercise of judicial power becomes so palpable that it can be considered void *ab initio* and challenged by anybody in any forum at any time.[3] While very few judicial orders deserve this disapprobation, a violation of Rule 1:1 is one of them.

## B. RULE 1:1 & EQUITABLE DISTRIBUTION

Even these distinctions are swept aside, however, when the legislature enacts specific exceptions to the mandatory application of Rule 1:1. Code § 20-107.3(K) specifically authorizes divorce courts to exercise their "continuing authority and jurisdiction" to do certain things even after the expiration of Rule 1:1's twenty-one-day deadline. The statute exempts from Rule 1:1 "any additional orders necessary to effectuate and enforce" any previous equitable distribution order entered pursuant to Code § 20-107.3.[4] As examples, the statute gives four scenarios in which continuing authority and jurisdiction would be appropriate.

---

[3] Examples include orders entered against parties outside the personal jurisdiction of the court, see, e.g., Slaughter v. Commonwealth, 222 Va. 787, 791, 284 S.E.2d 824, 826 (1981), and orders procured by extrinsic fraud, see, e.g., Jones v. Willard, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983). See also Evans v. Smyth-Wythe Airport Comm'n, 255 Va. 69, 73, 495 S.E.2d 825, 828 (1998); Wright v. Commonwealth, 52 Va. App. 690, 704, 667 S.E.2d 787, 793 (2008) (*en banc*).

[4] Paragraph 35 of the settlement agreement acknowledges the role that Code § 20-107.3(K) generally plays in the trial court's continuing post-Rule 1:1 authority over the divorce proceedings. App. at 33-34.

In this case, Julio Cabral argues that neither the general language of Code § 20-107.3(K) nor any of the four examples apply to this case. He asserts two different, but related, reasons. First, he contends the settlement agreement applies only to assets owned *by the parties* subject to equitable distribution — not to assets owned *by a separate legal entity* that, as a matter of law, are not subject to equitable distribution. Second, he argues that the agreement, if given the interpretation adopted by the trial court, would fall outside the scope of Code § 20-107.3(K) in any event. Because we find his first point persuasive, we need not address his second.

(i)

Except for the special rules governing child custody and support issues, see Kelley v. Kelley, 248 Va. 295, 299, 449 S.E.2d 55, 57 (1994); Verrocchio v. Verrocchio, 16 Va. App. 314, 317, 429 S.E.2d 482, 484 (1993), general principles of contract law govern the interpretation of settlement agreements in divorce cases, see Bailey v. Bailey, 54 Va. App. 209, 215, 677 S.E.2d 56, 59 (2009) (applying "the same rules of construction and interpretation applicable to contracts generally" (internal quotation marks omitted)). And the nature of the interpretative task does not change merely because the trial court incorporates the agreement by reference into a final decree. See Newman v. Newman, 42 Va. App. 557, 563, 593 S.E.2d 533, 536 (2004) (*en banc*).[5]

---

[5] Under Code § 20-109.1, a court may "affirm, ratify and incorporate by reference" a property settlement agreement into a final divorce decree. The agreement thereafter "shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." Id. An agreement incorporated by, but not merged into, a divorce decree may also be enforced under contract law and, if appropriate, warrant an award of specific performance or monetary relief. Rubio v. Rubio, 36 Va. App. 248, 253, 549 S.E.2d 610, 612-13 (2001) (*en banc*); Hering v. Hering, 33 Va. App. 368, 373-74, 533 S.E.2d 631, 634 (2000). Though this potential remedy existed in this case, Debbie Cabral did not pursue it. She instead requested only that the court exercise its equitable distribution power, which is purely a creature of statute and can only be exercised by courts presiding over divorce cases pursuant to Code § 20-107.3.

In Virginia, "[i]t is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." TravCo Ins. Co. v. Ward, 284 Va. 547, 552, 736 S.E.2d 321, 325 (2012) (internal quotation marks omitted). "'Words that the parties used are normally given their usual, ordinary, and popular meaning.'" Id. (quoting City of Chesapeake v. States Self-Insurers Risk Retention Grp., 271 Va. 574, 578, 628 S.E.2d 539, 541 (2006)). That meaning, of course, derives from the text as well as the context of the agreement.

Thus, "when considering the meaning of any part of a contract, we will construe the contract as a whole," Doctors Co. v. Women's Healthcare Assocs., 285 Va. 566, 572, 740 S.E.2d 523, 526 (2013) (internal quotation marks omitted), and strive not to "place emphasis on isolated terms" wrenched from the larger contractual context, Quadros & Assocs. v. City of Hampton, 268 Va. 50, 54, 597 S.E.2d 90, 93 (2004). Put another way, "[t]he contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties." Hale v. Hale, 42 Va. App. 27, 31, 590 S.E.2d 66, 68 (2003) (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)).

(ii)

Guided by these principles, we turn to the disputed provision of the settlement agreement. Paragraph 24, entitled "EQUITABLE DISTRIBUTION," states in full:

> Except as provided herein, the parties waive any right or entitlement to seek an award of equitable distribution from the other. The parties acknowledge that all assets have been disclosed and they are referred to in this Agreement. Any undisclosed or omitted assets shall be subject to an equitable distribution hearing and this matter may be reopened as to such property.

App. at 30-31. The specific words in contest are "undisclosed or omitted assets." Id. at 31. The trial court interpreted this phrase to include assets not owned by either party but assets owned by

- 8 -

a company in which either party had an equity interest. Reviewing this holding *de novo*,[6] we disagree.

It is true that the word "assets," if plucked out of a dictionary, could mean anything owned by anyone. But here the word appears in a sentence referring to assets that are "subject" to equitable distribution. Id. That sentence appears in a contractual provision entitled "EQUITABLE DISTRIBUTION," id. at 30, and that provision appears in an agreement entered into by divorcing parties seeking to settle their respective property rights arising out of a dissolving marriage. In context, the word "assets" plainly means assets owned by the parties, because only marital assets owned by the parties are subject to equitable distribution.[7]

The allegedly undisclosed asset in this case, an account receivable owned by a company in which Julio Cabral had a 50% interest, was never subject to equitable distribution.[8] The trial court could not have awarded the account receivable, or any part of it, to either party if the case had not been settled. Nor could the court acquire the power to do so because of the settlement agreement. Thus, the account receivable could not be an "undisclosed or omitted" asset that

[6] "Absent the necessity to consider extrinsic evidence, 'appellate courts review trial court interpretations of contractual texts *de novo* because we have an equal opportunity to consider the words within the four corners of the disputed provision.'" Vilseck v. Vilseck, 45 Va. App. 581, 588 n.3, 612 S.E.2d 746, 749 n.3 (2005) (quoting Smith v. Smith, 43 Va. App. 279, 288 n.2, 597 S.E.2d 250, 255 n.2 (2004)). This standard of review governs even in cases in which the trial court incorporates by reference, but does not merge, the agreement into its final decree. In such cases, we set aside the related (but inapplicable) principle that, "when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court." Albert v. Albert, 38 Va. App. 284, 298, 563 S.E.2d 389, 396 (2002) (internal quotation marks omitted).

[7] In so ruling, we imply no disparagement of the legal craftsmanship of the settlement agreement. It was drafted by experienced counsel and thoroughly addressed the many points of disagreement that arose during the divorce proceeding.

[8] See 1 Brett Turner, Equitable Distribution of Property § 5:51, at 531 (3d ed. 2005) ("Property which is owned by third parties, including a corporation owned entirely by the parties, is generally not marital property subject to equitable distribution."); see also Turner, *supra* § 5:16, at 309.

could be the subject of "an equitable distribution hearing" in a "reopened" divorce case. Id. at 31.[9]

Julio Cabral's interest in Sunset Development, LLC, no doubt constituted an asset under paragraph 24 of the settlement agreement. But this asset was expressly disclosed in another provision of the agreement. Paragraph 12, entitled "BUSINESS ENTITIES," identified his ownership "interest" in various businesses, including Sunset Development, LLC, and noted that Debbie Cabral "waive[d] any right or interest she may have in each of said entities." Id. at 28. Julio Cabral's equity interest in this company, therefore, could not be the subject of paragraph 24's attempt to provide for post-agreement equitable distribution. It necessarily follows that the final divorce decree remained subject to Rule 1:1 and was not subject to Code § 20-107.3(K)'s continuing authority to enter "additional orders necessary to effectuate and enforce" the final divorce decree's incorporation by reference of the settlement agreement.

## C. AWARD OF ATTORNEY FEES

The trial court awarded attorney fees to Debbie Cabral pursuant to a provision in the settlement agreement authorizing the recovery of attorney fees for the prevailing party in various circumstances. See id. ¶ 27, at 31. The parties dispute the scope of this provision and whether the trial court properly applied it. We need not resolve this dispute, however, because Debbie Cabral should not have prevailed in the trial court and, thus, should not have been awarded prevailing party attorney fees.

---

[9] It appears the trial court intuitively came to the same conclusion in its valuation analysis. It focused on the value of Julio Cabral's interest in Sunset Development, LLC, rather than limiting the analysis solely to the company's account receivable. App. at 2020 (stating the $329,000 award represented Debbie Cabral's "additional marital share of Sunset Development, LLC").

III.

In Record No. 0694-13-1, the appeal filed by Julio Cabral, we reverse the equitable distribution award based upon the account receivable owned by Sunset Development, LLC, and the corresponding award of attorney fees to Debbie Cabral.  In Record No. 0713-13-1, the appeal filed by Debbie Cabral, we dismiss as moot her challenge to the amount of the equitable distribution award and the award of attorney fees.[10]

Reversed in part; dismissed in part.

---

[10] Both parties seek an award of attorney fees on appeal.  We award appellate fees only in the unusual case where the arguments on appeal are "not fairly debatable under any reasonable construction of the record or the governing legal principles.  We have no reluctance imposing fees in such circumstances."  Brandau v. Brandau, 52 Va. App. 632, 642, 666 S.E.2d 532, 538 (2008) (citing O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)).  Applying this standard, we deny both parties' respective requests for appellate fees.