UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia

APRIL DILAURA

                                            MEMORANDUM OPINION* BY
v.        Record No. 0223-17-1          JUDGE RICHARD Y. ATLEE, JR.
                                               NOVEMBER 21, 2017

NORFOLK DEPARTMENT OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

Elizabeth M. Wood (Bush & Taylor, P.C., on brief), for appellant.

Erikka M. Massie (Laurie M. Nield, Guardian *ad litem* for the
minor children; Office of the City Attorney of Norfolk, on brief),
for appellee.

April Dilaura appeals a decision of the Circuit Court of the City of Norfolk terminating

her parental rights to three of her children.  We affirm.

I. BACKGROUND

In March 2016, the Juvenile and Domestic Relations District Court of the City of Norfolk

("the J&DR court") terminated the parental rights of April Dilaura ("mother") to three of her

children:  "A." (born in 2006), "G." (born in 2009), and "C." (born in 2012).  Mother appealed

those termination orders to the Circuit Court of the City of Norfolk ("the circuit court").  In

February 2017, the circuit court terminated mother's parental rights to the three children.  She

now appeals that decision.

As an appellate court, we review the circuit court's decision in the light most favorable to

the party prevailing below, and draw all reasonable inferences from the evidence in that party's

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

favor.  Boatright v. Wise Cty. Dep't of Soc. Servs., 64 Va. App. 71, 76, 764 S.E.2d 724, 727 (2014).  Here, the Norfolk Department of Human Services ("NDHS") prevailed in the circuit court.  The facts were as follows.

NDHS first became involved with mother in the summer of 2014, when mother abandoned A. at the home of an elderly relative, then disappeared for several weeks.  Eventually, NDHS located mother, who reported that she had been homeless for months, staying in hotels.  NDHS removed all three children from mother in September 2014.

The next month, at an adjudicatory hearing upon allegations of abuse and neglect, the J&DR court declared the children abused or neglected.  The J&DR court also entered a preliminary protective order as to each child, requiring mother to cooperate with NDHS and any recommended services.  At the same hearing, the J&DR court returned the children to mother's custody, following a report that mother and C.'s father had found somewhere for the family to live.

Unfortunately, this stability was fleeting; within days, the family resumed their transitory march among hotels.  By November, mother reported that the family was living in a house, but had no lease.  The house was in a state of significant disrepair.  That winter, the Court Appointed Special Advocate visited the house, and later testified that:

> the home was very cold, [and] that there was no glass in the back door and the opening was covered in trash bags.  The bedroom had cots but no sheets or blankets.  The children were not dressed warmly, and they seemed hungry.  There was no food in the refrigerator or the freezer, which [mother] told her was not working.[1]

The circuit court observed that "[t]he family ultimately had to leave that house as well due to foreclosure proceedings."

---

[1] This quotation, and the quotations that follow, are from the circuit court's January 20, 2017 letter opinion, which begins on page 942 of the appendix.

Even more concerning than the unstable housing was mother's inability to comply with the recommendations of NDHS or to avail herself of the services NDHS offered. In February 2015, the J&DR court "ordered that the children be removed again based on the failures of [mother] and [C.'s father] to complete, or in some cases even start, many of the services that were ordered."

NDHS's recommendations to mother included obtaining a parenting capacity evaluation, obtaining a substance abuse assessment and complying with any resultant service recommendations, maintaining employment, and attending mental health treatment appointments. But even with the children in the custody of NDHS, a circumstance that presumably would have provided mother with more time to address these issues, her "failure to comply with services persisted." She failed to complete a parenting capacity evaluation. She "participated in a substance abuse assessment, but the results of her urine screen were diluted—a circumstance that neither confirmed nor ruled out illegal substances and can be considered suspicious." She never provided proof of employment. Although she "admitted the need for mental health treatment," she never addressed this need. "[T]hese many issues were still extant as of September 2015, at which time the children had been in foster care for more than six months . . . ."

Other circumstances presented additional challenges. Two of the three children were grappling with mental health issues. An NDHS employee testified that A. was "diagnosed with a high level of anxiety and some trauma. Her doctor has recommended medication to manage her anxiety." Meanwhile, G. "had extreme behavior problems requiring four hospitalizations for aggressive and self-harming behaviors. He has a number of psychiatric diagnoses and has been unable to remain with foster parents. He has lived at [two different] residential treatment facilities for youths with emotional and behavioral problems." Finally, while the children were

in the custody of NDHS, mother pleaded guilty to possession of methamphetamine, and was placed on first-offender probation.

## II. ANALYSIS

### A. Standard of Review

We assume that the circuit court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). That assumption is rooted in a circuit court's "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Eaton v. Wash. Cty. Dep't of Soc. Servs., 66 Va. App. 317, 324, 785 S.E.2d 231, 235 (2016) (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795). When a circuit court's decision is "based on evidence heard *ore tenus*, [it] will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

### B. Analysis

Mother's assignment of error reads as follows:

> The [circuit] court committed reversible error because it was not in the best interests of the children to be taken away from [mother], nor had [mother] committed any acts that arose to the statutory definition of abuse or neglect elucidated in Va. Code Ann. [§] 16.1-228, namely, she had conditions that were created by her poverty but not by her mothering skills, she now is employed, has a place to live and is willing to submit to drug testing and a parenting capacity evaluation and any recommended treatment.

This assignment of error does not address termination of mother's parental rights, instead focusing on the J&DR court's initial finding of abuse and neglect. Even if mother had clearly assigned error to the circuit court's decision to terminate her parental rights, her brief inadequately supports such an assignment. Finally, even if mother had both clearly assigned

error to the termination decision, and fully discussed the issue in her brief, the record supports the circuit court's termination decision.

### 1. Inadequate Assignment of Error

As a threshold matter, this assignment of error does not address termination of mother's parental rights. Instead, it focuses on the J&DR court's finding of abuse and neglect and the resulting removal of the children. Mother's brief argues that neither abuse nor neglect caused the removal of the children. Rather, she alleges, "most of [mother's] issues, including the reason that the children were taken into custody in the first place, stemmed from poverty." By adjudicatory orders entered October 2, 2014, the J&DR court declared the children abused or neglected. Subsequently, in dispositional orders entered February 20, 2015, the J&DR court transferred custody of the children to NDHS. Mother did not exercise her right to appeal those dispositional orders. See Code § 16.1-278.2(D) ("A dispositional order entered pursuant to this section is a final order from which an appeal may be taken . . . ."). Mother's opportunity to contest the finding of abuse or neglect has long since passed. The propriety of the abuse and neglect finding was not before the circuit court, thus it is not before this Court. We are not procedurally empowered to correct the error mother alleges in her assignment of error (a wrongful finding of abuse or neglect). And mother's failure to assign error to the issue we could have addressed (termination) prevents us from answering that unasked question.

### 2. Inadequate Argument

Even if mother had clearly assigned error to the circuit court's decision to terminate her parental rights, her brief fails to support such an assignment. The inadequacy of her brief violates Rule 5A:20(e). That Rule states, in part, that "[t]he opening brief of appellant shall contain . . . [t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Mother's brief contains the standard of review,

but fails to present an argument supported by principles of law or authorities. Mother's support for her assignment of error consists of citations to five cases, all addressing the standard of review. Her argument is three paragraphs long. The only other authority she cites to support her argument is Code § 16.1-228, which defines "[a]bused or neglected child." In neither her brief nor her oral argument did mother make any reference to the code section under which termination occurred, Code § 16.1-283(C). We applaud succinct advocacy, but mother's thirteen-sentence argument sacrifices coherence on the altar of brevity.

In its order terminating mother's parental rights to each of her three children, the circuit court checked two boxes on the form order, indicating that based upon "clear and convincing evidence" and pursuant to Code § 16.1-283(C), it found that mother:

> without good cause, has failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent and to strengthen the parent-child relationship

and that she:

> without good cause, has been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or rehabilitative agencies to such end.

Those two paragraphs correspond to subsections (C)(1) and (C)(2), respectively, of Code § 16.1-283.[2] Mother's brief does not address her failure to maintain contact with the children for six months after they entered foster care, her failure to provide for their future, or her failure to

---

[2] The circuit court made both findings, although a finding as to either subsection alone would have justified termination.

remedy within 12 months the conditions which led to foster care placement. Instead, she is content to label the proceedings a misguided attack on a poverty-stricken parent.

Thus even if mother had clearly assigned error to the circuit court's termination decision, her claim is wholly unsupported by her brief, in violation of Rule 5A:20(e). We find further that mother's non-compliance with Rule 5A:20(e) is significant, and "when a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented [now assignment of error] as waived.'" Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (first alteration in original) (quoting Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008)); see also Budnick v. Budnick, 42 Va. App. 823, 834, 595 S.E.2d 50, 55 (2004) ("Having presented no citations or authority in his brief in support of these questions, husband has waived these questions on appeal and we need not address them."); see generally Rule 5A:1A(a) ("This Court may dismiss an appeal or impose such other penalty as it deems appropriate for non-compliance with these Rules."); Rule 5A:26 ("If an appellant fails to file a brief in compliance with these Rules, the Court of Appeals may dismiss the appeal.").[3] It is not this Court's "function to comb through the record . . . to ferret-out for ourselves the validity of" mother's assertions. Fitzgerald v. Bass, 6 Va. App. 38, 56 n.7, 366 S.E.2d 615, 625 n.7 (1988) (en banc); see also Buchanan v. Buchanan, 14 Va. App.

---

[3] Mother's brief also fails to comply with Rule 5A:20(c). That subpart of Rule 5A:20 requires that an opening brief contain a "a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." Mother cites page 53 of the appendix as the location of the preservation of the alleged error. Page 53 of the appendix is an affidavit of an employee of NDHS that was filed in support of the petition to terminate the parental rights of the father of two of the children. In fact, mother's objections in the circuit court are found over eight-hundred pages later. Notwithstanding mother's failure to make a "clear and exact reference" to the location of her preservation of the errors she alleges, we do not use this shortcoming as the basis for our decision in this case.

53, 56, 415 S.E.2d 237, 239 (1992) ("We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief.").

### 3. Clear and Convincing Evidence in Support of Termination

Finally, even if mother had both clearly assigned error to the termination decision, and fully discussed that assignment in her brief, termination was warranted under subsections (C)(1) and (C)(2) of Code § 16.1-283. In its February 2017 orders, the circuit court found that termination was in the best interest of each child and that by clear and convincing evidence, termination was justified under both subsections (1) and (2) of Code § 16.1-283(C).[4] Under subsection (C)(1), mother failed to maintain contact with the children for six months after they entered foster care. She also failed to provide for their future, a particularly problematic omission given the serious mental health needs of two of her children. Under subsection (C)(2), she failed to remedy within 12 months the conditions which led to foster care placement, by failing to address her admitted mental health problems, failing to provide proof of employment, failing to maintain stable housing, and failing to give an undiluted drug screen after admitting to drug use following the removal of the children. For these reasons, the circuit court's decision to terminate was supported by clear and convincing evidence, was in the best interests of the children, and was not plainly wrong.

### III. CONCLUSION

Mother does not assign error to the circuit court's decision to terminate her parental rights. Even if she had done so, the argument she offers on brief violates Rule 5A:20 in its inadequacy. Finally, even if her assignment of error had been clearly crafted and the argument in

---

[4] Although the appendix contains the circuit court's termination orders for C. and G., it contains no such order for A. The circuit court's termination order for A. is part of the record transmitted to this Court, however. Per Rule 5A:25(h), we may consider documents included in the record but left out of the appendix. Accord Cabral v. Cabral, 62 Va. App. 600, 604 n.1, 751 S.E.2d 4, 7 n.1 (2013).

support of that assignment of error had been fully explicated in her brief, the circuit court's decision to terminate was supported by clear and convincing evidence, was in the best interests of the children, and was not plainly wrong.

<u>Affirmed.</u>