# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and AtLee
Argued by videoconference


CHRISTINA MARIE WININGHAM

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1169-20-1                       JUDGE GLEN A. HUFF
                                                      FEBRUARY 23, 2021

STEVEN ELMORE WININGHAM, II


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          Steven C. Frucci, Judge

          Brandon H. Zeigler (Erin C. McDaniel; LeeAnne C. Schocklin;
          Parks Zeigler, PLLC, on briefs), for appellant.

          Brian C. Christian (The Law Office of Brian C. Christian, P.C., on
          brief), for appellee.


       In post-divorce litigation, the trial court determined that Christina Winingham ("wife")

was liable for mortgage payments on the former marital residence and ordered her to reimburse

Steven Winingham, II ("husband") for mortgage payments he made. The trial court also denied

wife's request for attorney's fees arising from several motions regarding both the marital

residence and husband's retirement pay.

       Wife asserts four arguments on appeal. First, she contends that the trial court erred in

interpreting the parties' separation agreement to make her liable for the mortgage payment on the

former marital residence. Alternatively, wife argues that the separation agreement's terms "are

not sufficiently definite to create an enforceable contractual obligation." Wife further argues

that, even if the mortgage were her responsibility, the trial court erred by ordering her to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reimburse husband for the mortgage payments he made. Lastly, wife contends that the trial court erred in refusing to award her attorney's fees for motions on which she claims to have prevailed.

For the reasons that follow, this Court affirms the judgment below.

## I. BACKGROUND

Husband and wife were married in Virginia Beach on October 2, 1999. They had two children, one born on September 14, 2000, and the other on February 19, 2004. The couple separated on March 16, 2013, and entered into a separation agreement (the "agreement"). The agreement was incorporated into the final decree of divorce that was entered on December 30, 2014.

The agreement contains three provisions pertinent to this appeal. The first two detail husband's support payments to wife and how the mortgage on the marital residence was to be paid:

4. CHILD SUPPORT/SPOUSAL SUPPORT

Husband shall pay, as and for unitary support, the monthly sum of $2,667.00 ($1267 spousal support and $1,400 child support) beginning May 1, 2014 and effective through March 1, 2018. The parties agree that the Husband shall pay the mortgage on the marital residence located at 531 Foxgate Quarter directly to the mortgage company (approximately $1,667.00) and deduct same from Wife's monthly unitary support so long as Wife resides in the home, but in any event, no longer than March 1, 2018. The remaining amount will be paid directly to the Wife. . . .

March 1, 2018, and thereafter, the Husband shall pay directly to the Wife as and for child support the monthly sum of $700 per minor child until further Order of court. Child support for each child is subject to termination upon Husband's death or the death of that child or that child's attaining age 18, or sooner becoming emancipated.

5.    REAL PROPERTY

The parties jointly own martial residence known commonly as 531 Foxgate Quarter, Chesapeake, VA 23322.  The parties agree that Wife shall have exclusive use and possession of the marital home and shall be responsible for the solely responsible for [sic] any liability associated thereto except that which is herein provided.  Further, the parties agree that the Husband shall pay the mortgage (approximately $1,667) and deduct same from Wife's unitary support until March 1, 2018 at which time the parties agree that Wife shall either list the house for sale at a fair market price recommended by the real estate agent selected by agreement of the parties or, in the alternative, refinance the home solely in her name. Wife shall take no action to delay or prohibit the sale of the marital home.  Upon sale or refinance of the marital home, the parties agree to evenly split (50/50) any proceeds from the sale of the home or, if the Wife decides to refinance the property, the Wife will pay the husband his 50/50 share of the property value appraised at the time of refinance minus the mortgage balance. Husband then agrees to execute a Quit Claim Deed releasing any and all title and interest in same.

The third sets forth how husband's military pension will be divided:

12.    RETIREMENT BENEFITS

The Husband will be a retired member of the United States Navy. By reason of his military service, the Husband will, upon retirement, receive benefits which will in part constitute marital property.  The parties intend that the Wife share, in the manner hereafter provided, in the retirement benefits to which Husband may be entitled and to that end report and agree as follows:

. . . .

f.  The Husband assigns to the Wife, to be paid directly from his United States Navy disposable retired pay, a portion of all benefits to which he is entitled calculated by reference to the following formula:

i. . . . The former spouse is awarded 22.5% of the disposable military retired pay the member would have received had the member become eligible to receive retired pay on March 16, 2013.

. . . .

- 3 -

k.  The Husband further agrees and guarantees to the Wife that he will not take any action so as to defeat the Wife's right to have *22.5% of the marital share* of the retired pay to which Husband will be entitled upon his retirement. . . .

l.  If the Husband applies for and receives a refund of his United States Navy retirement benefits as a lump-sum credit, then assigns to the wife, to be paid directly from the United States Navy retirement plan, *22.5% of the marital share* of such refund.

Following their divorce, wife continued living in the marital residence with the couple's two children.  Husband paid the mortgage on the marital residence per the agreement until March 1, 2018.  At that time, husband claimed that wife became responsible for continued payments on the mortgage.  Wife disagreed and claimed that husband remained solely responsible for the mortgage payments until the home was sold.

In the meantime, the parties attempted to place the home on the market.  However, a series of repairs caused significant delay in listing the home.  Ultimately, the marital residence was not placed on the market until April 2019 and was not sold until March 20, 2020.

Husband continued to pay the mortgage until the home sold on March 20, 2020.  However, after March 1, 2018, he offset his payments against spousal and child support claiming that the monthly mortgage payments exceeded his monthly support obligations.

In September of 2018, husband began receiving payments from his military pension.  Husband paid wife her portion of his retirement directly.  However, relying on paragraphs 12(k) and 12(l) of the agreement, husband paid wife only 22.5% of the marital share of his pension instead of 22.5% of the full amount of his pension as indicated in paragraph 12(f).

On March 6, 2019, husband filed a motion to reinstate the case and a petition for a rule to show cause against wife for her failure to assume responsibility for the mortgage payments.  On April 18, 2019, wife filed her own petition for a rule to show cause against husband for his alleged failure to pay wife the correct amount of his retirement benefits.

On September 30, 2019, in the midst of difficulties in listing the marital residence for sale, husband filed a motion for exclusive possession and use of the marital residence and a motion to appoint a special commissioner. In those motions, husband claimed that wife was insisting on a contingency in any sales contract that would allow her to remain in the former marital home for an additional month after it sold. Prior to any hearing on those motions, wife agreed not to seek any such contingency and husband withdrew those two motions.

Following a hearing on the show cause petitions, the trial court issued a letter opinion holding that husband's obligation to pay the mortgage ended on March 1, 2018. The trial court noted that after that date, husband's obligation to wife was limited to child support in the sum of $1400, or $700 per child, per month. That amount, in turn, was reduced by half when the couple's eldest child turned eighteen in September of 2018. The trial court's opinion left other matters open for future resolution. Husband subsequently filed a motion to apportion the sale proceeds of the marital residence seeking reimbursement for the mortgage payments he had made since March 1, 2018.

The trial court issued its final letter opinion on May 4, 2020. It held that wife was responsible for the mortgage payments from March 2018 until the date the home sold. However, it also held that there was no contractual language allowing husband to receive reimbursement via apportionment of the proceeds from the sale of the marital home. Therefore, the trial court ordered the proceeds from the marital home to be split 50/50 pursuant to the agreement and also ordered wife to reimburse husband for the mortgage payments he made in excess of his support obligations.

With regards to the retirement pay dispute, the trial court held that the contract was ambiguous because it inconsistently described wife's portion as 22.5% of husband's pension and also as 22.5% of the marital share of husband's pension. The trial court then found, based on

extrinsic evidence, that the parties intended the agreement to state that wife would receive 22.5% of husband's pension. In its corresponding order, the trial court denied both parties' requests for attorney's fees. This appeal followed.

## II. ANALYSIS

Wife asserts four arguments on appeal. In the first two, wife argues that the trial court misinterpreted the contract in holding that she was responsible for the mortgage payments after March 1, 2018. Thirdly, wife argues that the trial court erred in ordering her to reimburse husband for the mortgage payments because they were voluntary gifts. Lastly, wife contends that the trial court erred in refusing to award her attorney's fees for motions on which she purports to have prevailed. This Court finds each to be without merit.

A. The agreement states that wife is responsible for the mortgage after March 1, 2018.

Wife contends that the trial court erred in interpreting the agreement to require her to pay mortgage payments on the former marital residence. Alternatively, wife argues that the agreement's terms "are not sufficiently definite to create an enforceable contractual obligation." Both contentions are without merit.

This Court reviews the interpretation of property and settlement agreements *de novo*. See Plunkett v. Plunkett, 271 Va. 162, 166 (2006) (citing Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631 (2002)). "Property settlement agreements are contracts, and the rules of interpretation for contracts in general apply." Recker v. Recker, 48 Va. App. 188, 192 (2006).

The terms of a contract are "given their usual, ordinary, and popular meaning." Cabral v. Cabral, 62 Va. App. 600, 610 (2013) (quoting TravCo Ins. Co. v. Ward, 284 Va. 547, 552 (2012)). "When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." TravCo Ins. Co., 284 Va. at 552 (quoting Barber v. VistaRMS, Inc., 272 Va. 319, 329 (2006)).

Furthermore, when considering the meaning of any portion of a contract, the contract is construed as a whole. TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 119 (2002). This Court does not interpret contested provisions in isolation, wrenched from the larger contractual context. Cabral, 62 Va. App. at 610. "Put another way, '[t]he contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties." Id. (quoting Hale v. Hale, 42 Va. App. 27, 31 (2003)).

The agreement is far from ambiguous. It provides that wife "shall have exclusive use and possession of the marital home and shall be . . . solely responsible for any liability associated thereto except that which is herein provided." There is no doubt that mortgage payments are a liability associated with the marital home. Cf. Liability, Black's Law Dictionary (9th ed. 2009) ("[t]he quality, state, or condition of being legally obligated or accountable; legal responsibility to another . . ."). The only exception regarding the mortgage payments provided in the contract is that "Husband shall pay the mortgage . . . and deduct [the] same from Wife's unitary support so long as Wife resides in the home, *but in any event, no longer than March 1, 2018*."

These provisions are neither ambiguous nor indefinite. The contract provides that husband was responsible to pay the mortgage only until March 1, 2018, at the latest. Indeed, the contract explicitly states that husband shall not be responsible for the mortgage past that date. Therefore, any mortgage payments due after March 1, 2018 were the responsibility of wife.

B. The trial court did not err in ordering wife to reimburse husband.

Wife argues that the trial court erred in ordering her to reimburse husband for the mortgage payments he made for two years after March 1, 2018, when she refused to pay the mortgage liability associated with the marital residence which she occupied. This Court disagrees.

Wife relies on the general principle in Virginia that one party cannot unilaterally and voluntarily pay additional sums toward child or spousal support and then later claim it as a set-off for future support payments. Thus, a party who owes spousal or child support is not "permitted to vary [their] terms to suit his [or her] convenience." Sanford v. Sanford, 19 Va. App. 241, 246 (1994). Permitting one to "increase the amount of the specified payments at one time, reduce them at another, and require an adjustment of the differences in the future, would lead to continuous trouble and turmoil." Id. Therefore, in the absence of agreement between the parties, any voluntary overpayment of support payments is considered a gift or gratuity and no reimbursement can typically be sought. Id. at 248.

Wife argues that these principles apply to mortgage payments owed by both parties yet cites no support for doing so. The cases upon which wife relies deal with an individual voluntarily overpaying support obligations. That is categorically different than a person making mortgage payments that are jointly owed to a third party when an ex-spouse refuses to pay liabilities to which she has agreed in a post-separation agreement. Such payments are not a gift.[1] Therefore, this Court declines wife's invitation to stretch precedent regarding voluntary overpayment of spousal or child support beyond its intended bounds.

C. The trial court did not err in denying wife's request for attorney's fees.

Wife contends that the trial court erred in denying her motion for attorney's fees for motions she purports to have won. With regard to the marital residence, wife claims that the trial court erred in not awarding her attorney's fees because she prevailed in her defense of husband's motions for exclusive possession and use of the marital residence, motion to appoint a special commissioner, and motion to apportion the sale proceeds of the marital residence. Wife further

---

[1] Indeed, were wife correct, then husband would have been faced with the choice of either "gifting" wife the full mortgage payment each month or sacrificing his own credit score and risking his equity in the property by non-payment.

argues that the court erred in not awarding her attorney's fees for the litigation regarding husband's pension. This Court disagrees.

Generally, whether to award attorney's fees in proceedings related to divorce decrees "is a matter submitted to the sound discretion of the trial court and reviewable on appeal only for an abuse of discretion." Kane v. Szymczak, 41 Va. App. 365, 375 (2003) (internal quotation marks and citations omitted). Nevertheless, "[a]n abuse of discretion can be found if the trial court uses an improper legal standard in exercising its discretionary function." Congdon v. Congdon, 40 Va. App. 255, 262 (2003) (internal quotation marks and citation omitted).

"In suits for divorce . . . if a . . . contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of . . . counsel fee . . . shall be entered except in accordance with that . . . contract." Jones v. Gates, 68 Va. App. 100, 106 (2017) (omissions in original) (quoting Code § 20-109(C)). Therefore, if a property settlement agreement contains a provision awarding attorney's fees, a court abuses its discretion if it fails to abide by the terms of the agreement in awarding attorney's fees. See Rutledge v. Rutledge, 45 Va. App. 56, 61-62 (2005). The agreement provides that "in the event it becomes necessary to institute or defend legal proceedings to enforce any of the terms of this Agreement . . . the prevailing party shall be entitled to receive from the other all reasonable attorneys' fees, court costs and expenses incurred."

First, wife did not "prevail" on any of the motions related to the marital residence. A "prevailing party" is "the party in whose favor the decision or verdict in the case is or should be rendered and judgment entered, and in determining this question the general result should be considered, and inquiry made as to who has, in the view of the law, succeeded in the action." Sheets v. Castle, 263 Va. 407, 414 (2002) (quoting Richmond v. Cnty. of Henrico, 185 Va. 859, 869 (1947)). Furthermore, this inquiry does not focus on the procedural mechanisms of any

case. Rather, the proper focus is whether one party was in default of their obligations and the other party prevailed. See, e.g., Jones, 68 Va. App. at 107; Stacy v. Stacy, 53 Va. App. 38, 49-50 (2008).

Husband's motions for exclusive possession and to appoint a special commissioner were brought because wife was insisting on placing a contingency on any sales contract to allow her to remain in the marital residence after its sale. Prior to any hearing on the motions, wife advised husband that she would no longer seek such a contingency and husband withdrew the motions. Thus, neither motion was heard, much less ruled on by the trial court. Accordingly, wife did not prevail on either.

Similarly, wife did not prevail on husband's motion to apportion sale proceeds of the marital home to reimburse his payment of the mortgage. The trial court found wife to be in default of her contractual obligation to pay the mortgage. The trial court also agreed with husband on the substance of his motion: that he was entitled to repayment for the mortgage payments he made. Although there was no provision to apportion the sales proceeds of the home, the trial court nonetheless ordered wife to fully reimburse husband for the payments he made. Thus, husband prevailed on the substance of this motion.

Lastly, wife claims that the trial court erred in denying her motion for attorney's fees because she prevailed in the litigation regarding husband's pension. However, the plain language of the agreement requires a party to succeed in an *enforcement action* to be entitled to attorney's fees. Thus, wife was entitled to fees only if she prevailed *and* husband was in default. See Craig v. Craig, 59 Va. App. 527, 541 (2012) ("[Under this agreement] there are two predicates for an award of attorney's fees: (1) successful enforcement of the agreement; and (2) a defaulting party."). A party's "failure to settle a contested claim is not a default." Craig, 59

Va. App. at 541. Thus, where a party abides by the terms of an agreement, they are not in default of that agreement.

Because of poor drafting, the agreement included two contradictory provisions. In two sections, the agreement called for wife to receive 22.5% of the marital share of husband's pension. In another section, the agreement stated that wife would receive 22.5% of husband's total pension. While the parties disagreed as to the proper amount wife was owed, there is no dispute that husband adhered to the two sections of the agreement which required him to pay wife 22.5% of the marital share. Neither party prevailed on an enforcement action. Rather, the trial court, after taking extrinsic evidence, interpreted the meaning of the agreement. Accordingly, wife did not prevail in an enforcement action that would entitle her to an award of attorney's fees under the terms of the agreement.

In sum, wife did not prevail on the motions relating to the marital residence. Furthermore, husband was not in default regarding payment of his pension. Therefore, the trial court did not err in denying wife's requests for attorney's fees.

### III.  CONCLUSION

The terms of the agreement related to the marital residence were clear and unambiguous. Wife was responsible for payment of the mortgage after March 1, 2018. Accordingly, the trial court did not err in so ruling. Nor did it err in ordering wife to reimburse husband for mortgage payments he made after March 1, 2018. Furthermore, the trial court did not err in denying wife's motions for attorney's fees. Therefore, this Court affirms the judgment below.

<u>Affirmed.</u>

- 11 -